Case 2:23-cr-00191-LSC-SGC   Document 1   Filed 05/12/23   Page 1 of 14   FILED
2023 May-12 PM 02:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Alabama

| | |
|---|---|
| United States of America<br>v.<br>JUAN ANTONIO DURAN,<br>and<br>JOSE NICOLAS FLORES<br><br>*Defendant(s)* | )<br>)<br>)   Case No.<br>)       Mag. 23-224<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __May 9 --11, 2023__ in the county of __Jefferson__ in the __Northern__ District of __Alabama__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 371 | Conspiracy against the United States |

This criminal complaint is based on these facts:
See the attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Christopher Baker, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 12, 2023

*Judge's signature*

City and state: Birmingham, Alabama

Staci G. Cornelius, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Christopher J. Baker, being duly sworn, depose and state that:

## INTRODUCTION AND AGENT BACKGROUND

1. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered to conduct investigations of and to make arrests for the offenses enumerated in Titles 18, 19, 21, 26 and 31, of the United States Code and other related offenses. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), Department of Justice, and have been so employed since January 2016. I am currently assigned to the Birmingham, Alabama Field Office. My duties include the investigation of federal firearms offenses and associated violent crime and narcotics offenses.

2. Prior to serving as an ATF Special Agent, I was a Police Officer, Field Training Officer, Firearms Instructor, and General Instructor with the Birmingham Police Department in Birmingham, Alabama, for nearly 8 years. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I am a graduate of the ATF Firearm Interstate Nexus and Identification training program. I have made well over seven hundred (700) determinations of interstate nexus for firearm and ammunition exhibits.

3. As a result of my training and experience as an ATF Special Agent, I

am familiar with federal criminal laws and know that the following are violations of Title 18, United States Code, Section 922(a)(6) and Title 18, United States Code, Section 371. I have personally participated in this investigation and am aware of the facts contained herein based upon my own investigation as well as information provided to me by other law enforcement officers. Since this Affidavit is submitted for the sole purpose of establishing probable cause to support the issuance of a complaint, I have not included each and every fact known by the government concerning criminal activities committed by the defendant.

## STATUTORY AUTHORITY

4. Title 18, United States Code, Section 922(a)(6) makes it a federal crime for any person, in connection with the acquisition or attempted acquisition of a firearm from a federally licensed dealer of firearms, to knowingly make any false or fictitious oral or written statement intended or likely to deceive such dealer with respect to any fact material to the lawfulness of the sale or other disposition of such firearm.

5. Title 18, United States Code, Section 371 makes it a federal crime for two or more persons to agree to commit any offense against the United States or to defraud the United States, or any agency thereof if one or more such persons do any act to effect the object of the conspiracy.

## INTRODUCTION

6.     Gunprime, LLC, doing business as Birmingham Pistol Wholesale (BPW), is a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, and operates in Jefferson County, Alabama.

7.     Before a federally licensed firearms dealer can sell a firearm, the person receiving/buying a firearm from a federally licensed dealer of firearms is legally required to complete and certify the accuracy of a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record pertaining to the transaction.

## PROBABLE CAUSE

8.     Between May 9, 2023, and May 11, 2023, **Juan Antonio DURAN** did conspire with **Jose Nicolas FLORES** to provide false or fictitious statements to a Federal Firearms Licensed Dealer (FFL) during the acquisition of firearms in violation of federal law.

9.     On December 1, 2022, **Juan Antonio DURAN** telephonically contacted Birmingham Pistol Wholesale (BPW), a Federal Firearms Licensee (FFL), located in Trussville, AL, inquiring about purchasing two Barrett .50 caliber rifles with cash for approximately $20,000. **DURAN** telephonically contacted BPW from telephone number, 701-580-1252. ATF Special Agent Brian Vessels was notified by the BPW employee/manager that it was clear that **DURAN** was unfamiliar with

the firearm, as he didn't know it came in either bolt action or semi, didn't specify a 20" or 29" inch barrel, he didn't ask/inquire about the color of the firearm, nor the warranty, magazines, a bi-pod or mono, or even a carrying case. **DURAN** notified the BPW employee/manager that he was from North Dakota but resided in Oklahoma currently. After learning of this intelligence/information, ATF Special Agent Vessels referred this information to the ATF Bismarck Satellite Office for further investigation. Included in this referral from ATF Special Agent Vessels was a note from the FFL BPW, which was hand-written. This note stated that **DURAN** called inquiring about the Barrett .50 caliber rifles, provided **DURAN's** telephone number, and notated that **DURAN** was "100% Cartel."

10. An intelligence work-up was conducted by ATF Special Agents Vessels on **DURAN**, which also was provided to the ATF Bismarck Satellite Office for follow-up purposes. This intelligence work-up included **DURAN's** prior address history out of Tulsa, Oklahoma, and identified a possible current co-habitant (Lizbeth Garcia).

11. On May 9, 2023, the BPW employee/manager notified ATF Birmingham Group I Special Agents that **DURAN**, along with another individual, **Jose Nicholas FLORES**, had traveled together interstate from Oklahoma to purchase three (3) Barrett, .50 caliber rifles (firearms) in the state of Alabama.

**DURAN** and **FLORES** both reported they were from Oklahoma and a license plate tag on **DURAN's** vehicle showed it was registered out of Oklahoma as well.

12. Your affiant learned that on May 5, 2023, **DURAN** had accompanied **FLORES** for another attempted purchase of a Barrett .50 caliber rifle from another FFL, High End Armament Technology Inc., which is located in Tulsa, Oklahoma. This attempted purchase resulted in a denial. The denial occurred because **FLORES** presented a United States Passport for identification purposes and not a State issued identification that establishes one's state of residency and is required for firearm purchases from a FFL.

13. Additionally, ATF Special Agents learned that **FLORES** had obtained an Oklahoma temporary identification card on May 8, 2023. Given the previous firearm denial on May 5, 2023, ATF Special Agents believe the Oklahoma identification card was obtained for future firearm purchases as a straw for **DURAN**. It is important to note that **FLORES** shows no reportable income in the State of Oklahoma but does show recent earnings from a restaurant in San Antonio, Texas.

14. Also on May 8, 2023, shortly after obtaining an Oklahoma identification card, **FLORES** contacted High End Armament Technology Inc., reporting that he had obtained proper state identification and now wanted to purchase a Barrett .50 caliber rifle. Unbeknown to ATF Birmingham Group I, but later learned, an employee/manager of High End Armament Technology Inc. contacted

ATF Tulsa regarding this suspicious attempted firearm transaction. Furthermore, it was communicated by the FFL employee/manager that he notified **FLORES** that the business was closed for the day, because of how suspicious this firearm inquiry appeared and the need to thwart possible firearms trafficking. Because this FFL rused **FLORES**, it allowed ATF time to conduct additional intelligence gathering on both **FLORES** and **DURAN**. Additionally, it was communicated to ATF Birmingham Group I case agent, your affiant, that **FLORES** seemed careless of the $12,500 price tag for the Barrett rifle, which is a large sum of money for someone who lacks steady employment and only showed recent earnings at a restaurant outside the state.

15. Evidently in response to the rused store closure, **DURAN** and **FLORES** drove to Trussville, Alabama, on May 8, 2023, with the plan to visit BPW the following day. Information obtained from License Plate Reader databases indicate **DURAN**'s vehicle was in the city limits of Birmingham just after 7:00pm on May 8, 2023. Minutes after BPW opened their doors for business on May 9, 2023, **DURAN** and **FLORES** entered BPW and **FLORES** selected three (3) Barrett .50 caliber rifles to purchase. **FLORES** also indicated that he would be paying in cash. The total expense for the three (3) selected Barrett .50 caliber rifles was approximately $31,860.42.

16. BPW employees immediately contacted the ATF Birmingham Field Office to report the suspicious activity. After receiving transaction details and identifying personal and vehicle information, ATF Birmingham Group I Field Agents responded to BPW and started physical surveillance of **DURAN** and **FLORES**. Upon ATF Birmingham Group I Field Agents arrival, **DURAN** and **FLORES** were still inside. BPW employees notified ATF Special Agents that **FLORES** completed the required ATF Form 4473 (Firearm Transaction Record) and signed it, indicating that he was the actual buyer of the three (3) selected Barrett .50 caliber rifles. It should be noted that **DURAN** oversaw **FLORES** complete the required paperwork, which is commonplace for firearm traffickers monitoring the straw purchase given the sum of money involved. Per your affiant's request, the **FLORES**' transaction was delayed pending the completion of a background check. **FLORES** provided two telephone numbers to BPW employees for a call back 726-213-0782 and 210-542-8209. It should be noted that the second telephone number was provided only after they were notified of the delay. This is important because the latter telephone number was then provided as the primary call back number. Later, law enforcement database queries revealed that both telephone number(s) area codes indicated being from San Antonio, Texas.

17. After having been informed of the delay, **FLORES** elected to purchase BPW's entire stock of Barrett .50 caliber rifle magazines. **FLORES** paid $2,769

cash for fifteen (15) magazines.  After this transaction was complete, **DURAN** and **FLORES** left the location, with no firearms having been transferred, in **DURAN**'s vehicle, to wit: a black 2016 Nissan Titan XD Platinum, OK Tag: GYH615, bearing VIN: 1N6BA1F43GN507782.   ATF Birmingham Group I Field Agents and Task Force Officers (TFOs) surveilled **DURAN**'s vehicle from BPW for about fifteen (15) miles west of the Birmingham city limits as it continued to travel Westbound on Interstate 22.

18. Later, I was provided with information, given by other local law enforcement officers, that **DURAN's** vehicle was spotted entering the Memphis, Tennessee, area and again spotted leaving Memphis, Tennessee, a short time later. Based on this route of travel it was believed that both **DURAN** and **FLORES** were traveling back to Oklahoma.

19. It is important to note that the purchase of multiple Barrett .50 caliber rifles does often alert firearm dealers to the likely presence of criminal behavior.  It is also well known that the Barrett .50 caliber rifle is considered highly desirable by the Mexican Drug Cartels.  The Barrett .50 caliber rifle, amongst other makes, can expel a very accurate, heavy, and fast-moving projectile that defeats all individually worn body armor, and is known as an anti-vehicle firearm that can penetrate and disable vehicles, aircraft, etc., and can even defeat some types of protection provided by armored vehicles.

20. The above-described activity is also common among straw purchasers in the United States with the intent of smuggling the firearms to Mexico to support the drug cartels. Your affiant knows that the .50 caliber rifle is not only an expensive, desirable, and powerful weapon, but ownership of said firearm is a status symbol within the drug cartels. I also know that these straw purchases of Barrett .50 caliber rifles and their accessories, that are bound for use by the Mexican drug cartels, are predominately purchased with bulk cash.

21. Knowing that and to combat firearms trafficking into war torn Mexico, it's required for all FFLs located in the states of California, New Mexico, Arizona, and Texas to complete multiple sale forms for handguns and long guns, pursuant to the ATF Demand 3 letter. It should be noted that the ATF Demand 3 letter is issued monthly to assist ATF in its efforts to investigate and combat the illegal movement of firearms along and across the southwest border. Additionally, ATF requires FFLs to file a multiple sale form for individuals that purchase two or more firearms in a five-day timeframe. States that do not share a border with Mexico are required to complete multiple sale forms only for the sale of handguns but are exempt for reporting requirements pertaining to the sale of long guns. Based on my training and experience, firearms traffickers attempt to avoid detection of the purchase of bulk quantities of long guns by traveling out of the border states, thus avoiding the ATF Demand 3 letter requirement. The repeated purchase of Barrett .50 caliber rifles by

individuals residing close to and having ties to Texas is a clear indicator of firearms trafficking, especially when the firearms are being procured from another state, such as Alabama. In this instance, **DURAN** and **FLORES'** modus operandi aligns with that of previous known international firearm traffickers.

22. On or about May 9, 2023, an ATF intelligence research specialist conducted recent border crossing checks on **DURAN** and **FLORES**. The results for **DURAN** showed that he re-entered the United States from Mexico in April of 2023.

23. On May 10, 2023, ATF Tulsa notified ATF Birmingham Group I Field Agents that **DURAN** and **FLORES** had returned to High End Armament Technology Inc., to complete the Barrett .50 caliber rifle purchase. ATF Tulsa instructed the FFL to take possession of the U.S. currency for the firearm purchase, but to delay the transaction, so **FLORES** and **DURAN** did not receive a firearm in return. The FFL notified **DURAN** and **FLORES** that the transaction was delayed, and they would be able to pick-up the firearm in the next couple of days. Although **FLORES**, in the presence of **DURAN**, did provide funds to the FFL for a firearm purchase, no firearms were transferred to them.

24. Upon learning this information, ATF Birmingham Group I Field Agents instructed BPW employee/manager to contact **FLORES** and/or **DURAN** at the 201-542-8209 telephone number and advise of a firearm proceed, meaning the background cleared and the Barrett .50 caliber rifles could be picked up. The BPW

employee/manager made the telephone call as requested, in the presence of ATF Special Agents. **FLORES** and/or **DURAN** advised they would travel back to Alabama and pick-up the firearms the next day, May 11, 2023.

25. Continuing on May 10, 2023, ATF Birmingham Group I Field Agents conducted on-going surveillance through the monitoring of License Plate Readers to establish direction of travel back to Alabama and an approximate arrival time. License Plate Readers showed hits in Arkansas and Tennessee in the afternoon. At around 11:45pm, **DURAN's** vehicle was located in Jasper, Alabama, outside a Love's gas station, which is located at 83 Carl Cannon Blvd., Jasper, AL 35501. Soon thereafter, surveillance was cut for the night, but re-established in the morning of May 11, 2023.

26. On May 11, 2023, **DURAN's** vehicle was followed from the Jasper, AL, area to the Trussville, AL, area. **DURAN's** vehicle arrived at BPW at approximately 9:20am. ATF Birmingham Group I Field Agents observed **DURAN** and **FLORES** exit the vehicle and enter BPW. At that time, an ATF undercover (UC) agent made contact with **DURAN** and **FLORES**, acting as a store employee of BPW. During the brief interaction, **FLORES** recertified his ATF Form 4473 (Firearms Transaction Record), indicating he was the actual purchaser by checking "Yes" to question 21a. "Are you the actual transferee/buyer of all the firearms listed on this form?" Additionally, the ATF UC instructed **FLORES** to come to a

backroom to count the U.S. currency for the firearms transaction. The ATF UC requested for **DURAN** to go move his vehicle out back, so the Barrett .50 caliber rifles could be loaded into **DURAN's** truck. ATF Special Agents made contact with **DURAN** after he moved his vehicle to the back warehouse area. Because **DURAN** was known to be armed, ATF Special Agents immediately detained **DURAN** and searched his person. **DURAN** did not have a firearm on his person, but stated one was locked in his vehicle. Agents recovered a truck key and $1,950 of U.S. currency from **DURAN**. During this same time, **FLORES** was detained in the backroom of BPW by additional ATF Special Agents.

27. Both **DURAN** and **FLORES** were briefly interviewed at BPW before both individuals were transported back to the ATF Birmingham Group I Field Office as to not interfere with the business operations of BPW. **DURAN's** vehicle was transported by ATF Special Agent John Pearson, as a warrant would be pursued to search the vehicle.

28. During the post-*Miranda* contact/interview of **DURAN**, he requested counsel, so the interview was concluded. However, **FLORES** admitted that he received the bulk U.S. currency ($30,900, which was given to the ATF UC for the 3 Barrett .50 caliber rifles) from **DURAN** for the purpose of buying firearms for **DURAN**, that is, a straw purchase. **FLORES** also reported that **DURAN** was

operating on behalf of the Sinaloa Cartel. Also, it should be noted that **FLORES** stated that **DURAN** had previously acquired six (6) Barrett .50 caliber rifles.

29. Based on all of the aforementioned intelligence, and the subsequent confession by **FLORES**, your affiant knows that **DURAN** is a firearms trafficker, and that **FLORES** was one of his straw purchasers. It is very likely that **DURAN** has other straw purchasers working on his behalf and in proxy for the Sinaloa Cartel.

30. Based on the above facts, the affiant believes there is probable cause to believe that **Juan Antonio DURAN and Jose Nicolas FLORES**, between May 9, 2023, and May 11, 2023, did violate Title 18, United States Code, Section 371, by conspiring to provide false or fictitious statements to a Federal Firearm Licensed Dealer (FFL) during the acquisition of firearms in violation of federal law.

Respectfully Submitted,

_____
CHRISTOPHER J. BAKER,
Bureau of Alcohol, Tobacco,
Firearms Special Agent

Sworn and subscribed telephonically to me on this 12th of May, 2023.

_____
STACI G. CORNELIUS
United States Magistrate Judge